```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
DONNA LYNN DAVIS,

                         Plaintiff,
         -vs-                              No. 6:14-CV-06373 (MAT)
                                           DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                         Defendant.
```
___

## I. Introduction

Represented by counsel, Donna Lynn Davis ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II. Procedural History

The record reveals that in March 2011, plaintiff (d/o/b November 25, 1957) applied for DIB, alleging disability as of April 20, 2001. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge

Milagros Farnes ("the ALJ") on September 19, 2012. The ALJ issued an unfavorable decision on October 12, 2012. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Relevant Evidence**

Although plaintiff filed her application in 2011, her date last insured under the Act was December 31, 2002. See T. 48. The record contains sparse evidence from the relevant time period, which began on the alleged onset date, April 20, 2001, and ended on the date she was last insured. See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. § 404.1512(d); see, e.g., Cataneo v. Astrue, 2013 WL 1122626, *2 (E.D.N.Y. Mar. 17, 2013). This Court's review focuses on the relevant time period.

In August 2001, plaintiff saw Dr. John Sciortino for complaints of lower back and left leg pain of two weeks duration. On physical examination, she had decreased lumbar range of motion; seated Kemp's, seated straight leg raise, Nachlas, and Yeoman's test produced low back pain bilaterally; she experienced pain to palpation at L4-L5 and L5-S1; and tenderness and hypertonicity were noted in the lumbar musculature bilaterally. It was noted that an April 19, 2000 MRI showed mild disc dessication and disc bulge at L4-L5 without any mass effect on the neuro structures, and no evidence of focal disc herniation, spinal canal stenosis, or other significant abnormalities. A February 26, 2001 MRI showed a small central disc protrusion at the C5-C6 level. Dr. Sciortino diagnosed

L4-L5 and L5-S1 facet joints syndrome, lumbar myospasm, and left leg neuralgia.

Treatment notes from Dr. Sarah Nemetz, which relate to plaintiff's physical and mental health impairments, span the relevant time frame of August 2001 through the end of 2002. Plaintiff complained intermittently of depression, mood swings, and anxiety; headaches; hip, leg, and back pain; and insomnia. Plaintiff took Zoloft for depression symptoms and Flexeril for pain. Plaintiff was diagnosed with fibromyalgia in addition to migraines and depression. Physical examinations primarily noted tenderness of the back and hips.

In July 2002, Dr. Allen Pettee examined plaintiff in relation to complaints of headaches. Plaintiff reported a history of headaches, with recent worsening of symptoms including a persistent droop in her left eye. She reported she suffered from headaches approximately twice a week, and took Maxalt to treat pain. Physical examination was normal except that plaintiff reported pain with lateral eye movement. Dr. Pettee diagnosed migraines and ptosis (drooping) of the left eyelid, and recommended an MRI of the head. In September 2002, Dr. Pettee noted that this MRI came back "completely normal." T. 222. On examination, Dr. Pettee noted "mild left ptosis" and continuing migraines. Plaintiff reported that she relied on "Advil and a cup of coffee" to control her headaches.

3

**IV.   The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2002. At step one, the ALJ determined that plaintiff did not engage in substantial gainful activity from April 20, 2001, the alleged onset date, through December 31, 2002, her date last insured. At step two, the ALJ found that plaintiff suffered from the following severe impairments: degenerative disc disease, headaches, osteoarthritis, fibromyalgia, and affective disorder. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she required an alternating at-will sit/stand option; she was precluded from overhead reaching, stooping, or bending and could not perform production rate or pace work; and she could have only occasional contact with the public and co-workers.

After finding that plaintiff could not perform any past relevant work, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs existing in

4

significant numbers in the national economy which plaintiff could perform. Accordingly, he found that she was not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

In order to be entitled to DIB under Title II of the Act, a claimant must establish that she became disabled prior to the expiration of her insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). Evidence of an impairment which reached disabling severity after the expiration of insured status, or which was exacerbated after such expiration, cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired. See Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir. 1989) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.' . . . [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he

cannot be entitled to benefits.") (citations omitted)). The Commissioner is not required to consider evidence predating or postdating the relevant time period. See Brogan-Dawley v. Astrue, 484 F. App'x 632, 633 (2d Cir. 2012) (concluding ALJ was not required to consider medical evidence that predated or postdated the relevant period).

Plaintiff contends that the ALJ erred in determining her RFC without relying on any opinion from an acceptable medical source, and without giving any weight to the opinion of her chiropractor. The Court agrees. Oddly, neither the ALJ, nor plaintiff or the Commissioner, have focused on the time period relevant to plaintiff's case. Although the ALJ's findings were limited to the time period "through the date last insured," he nevertheless summarized and considered evidence predating and postdating the relevant time period. T. 48-55. As a result, the ALJ's decision lacks focus on the actual issue relevant to this case, which is whether plaintiff was disabled *during the relevant time period*.

The only assessments of plaintiff's physical capabilities came from plaintiff's chiropractor, Dr. Louis Catapano. In September 1998, Dr. Catapano opined that plaintiff was permanently restricted to "no lifting greater than 10 pounds, no repetitive lifting, bending, or twisting" and "[n]o sitting with the neck in greater than 20 [degrees] of flexion for more than 30 minutes without changing positions." T. 560. He further opined that she would

require supportive chiropractic treatment, prescription medication, and exercise "on an indefinite basis," and that her prognosis with poor; "[h]er condition [would] probably slowly worsen and deteriorate with time in that she may require more frequent treatment as a result of her motor vehicle accident of April 24, 1996." Id. This opinion arguably related to the relevant time period, in that it found the described limitations to be permanent.

In August 2012, Dr. Catapano issued another opinion which stated that he had been treating plaintiff for 15 years. However, he stated that the limitations described in his opinion applied to the time period from two to five years prior to the opinion's date. Thus, the opinion described limitations beginning, at the earliest, in 2007 – six years after plaintiff's alleged onset date, and five years after her date last insured.

The ALJ gave Dr. Catapano's opinions little weight. In rejecting the 1998 opinion, the ALJ concluded that it was outdated and inconsistent with plaintiff's subsequent reported work history. Plaintiff reported that she had worked part-time as a lunch room helper from 2000 to 2009, full-time as a childcare worker from 2003 to 2004, and full-time as a stocker and cashier in a gift shop from 2007 to 2008. T. 177, 196-99. These positions involved various physical demands, including walking, sitting, standing, kneeling, crouching, writing, and lifting 10 to 15 pounds. T. 196-99.

The only assessment of plaintiff's mental limitations came from Dr. Vincent Fasanello, who treated plaintiff from September 2005 through July 2012, and issued his mental residual functional capacity ("RFC") assessment in August 2012. Thus, Dr. Fasanello's opinion related to a time frame well after the relevant period in this case. The ALJ gave little weight to Dr. Fasanello's opinion, finding primarily that it was inconsistent with plaintiff's own reports of her symptoms. However, as he did with Dr. Catapano's 2012 opinion, he failed to recognize in his decision that these opinions were, in fact, irrelevant to a determination of disability in this case.

It is the ALJ's duty to develop a complete medical history, which includes functional assessments of a claimant's physical limitations. 20 C.F.R. § 404.1545. The status of this case is that the ALJ had one opinion regarding plaintiff's physical capabilities which could arguably have related to the relevant time period, which he gave little weight. The ALJ came to his RFC determination without the benefit of any functional assessment from an acceptable medical source relating to the relevant time frame. Having failed to give Dr. Catapano's opinion any significant weight, it is unclear how the ALJ arrived at his RFC determination. His determination was apparently based on his own interpretation of the medical record, and thus constituted reversible error. See, e.g., <u>Hernandez v. Comm'r of Soc. Sec.</u>, 2015 WL 275819, *2 (N.D.N.Y.

Jan. 22, 2015) (reversing and remanding for ALJ to obtain opinion of treating physician or other medical source) (citing McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)); Gross v. Astrue, 2014 WL 1806779, *18 (W.D.N.Y. May 7, 2014) (holding that remand was appropriate where the ALJ determined a claimant's RFC "primarily . . . through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); Haskins v. Astrue, 2010 WL 3338742, *5 (N.D.N.Y. Apr. 23, 2010), report and recommendation adopted, 2010 WL 3338748 (N.D.N.Y. Aug. 23, 2010) (reversing and remanding case where "[t]he ALJ failed to re-contact Plaintiff's treating physicians, failed to obtain an SSA consultative examination, and failed to request the opinion of a medical expert").

On remand, the ALJ is directed to obtain detailed functional assessments from plaintiff's treating sources (including Dr. Catapano), or consulting sources if treating sources are unable to provide such assessments, as to plaintiff's physical and mental limitations during the relevant time frame, April 20, 2001 through December 31, 2002. The ALJ may consider evidence either predating or postdating the relevant time period, if that evidence clearly relates in some way to plaintiff's condition during the relevant time period. If the ALJ deems it necessary, he may request further records from treating sources relating to the relevant time period.

x

The Court notes that Dr. Catapano is a chiropractor and not an "acceptable medical source" under the regulations, see 20 C.F.R. § 404.1513(d)(1), and therefore his opinion is not entitled to controlling weight under the treating physician rule. His report, however, may be used to show the severity of plaintiff's impairments and how those impairments affect the claimant's ability to work. See id. Indeed, his opinion "may be given significant weight under the appropriate circumstances." Delacruz v. Astrue, 2011 WL 6425109, *17 (S.D.N.Y. Dec. 1, 2011) (quoting Mackey v. Barnhart, 306 F. Supp. 2d 337, 344 (E.D.N.Y.2004) (citing Diaz, 59 F.3d at 313 n. 4)) (internal quotation marks omitted), report and recommendation adopted, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011); see also Monette v. Astrue, 269 Fed. App'x 109, 113 (2d Cir. 2008) (noting that a chiropractor's opinion may be given "significant weight in appropriate circumstances"); Kostzenskie v. Astrue, 2009 WL 2383307, *3 (N.D.N.Y. July 30, 2009) (finding ALJ erred in giving no weight to the opinion of the treating chiropractor).

Thus, on remand, the ALJ should evaluate Dr. Catapano's 1998 opinion, as well as any new opinion issued by Dr. Catapano in response to the ALJ's request, in accordance with these principles. His opinion is entitled to at least some weight, considering the longtime treatment relationship he has with plaintiff, and may be due more weight if it is consistent with other substantial evidence in the record. See Kostzenskie v. Astrue, 2009 WL 2383307, *3

(N.D.N.Y. July 30, 2009) ("All courts agree that the opinion of a treating chiropractor or a physical therapist must be accorded some weight."); White v. Comm'r, 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (holding that ALJ erred in not giving appropriate weight to claimant's social worker as "other source" evidence under 20 C.F.R. § 416.913(a), particularly "given that he . . . had a regular treatment relationship with plaintiff.").

In light of the Court's decision to remand this case for further proceedings, the Court declines to address plaintiff's further arguments regarding credibility and vocational expert testimony.

### VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 16) is denied and plaintiff's motion (Doc. 12) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    February 1, 2016
          Rochester, New York.